## GRAFTON BANK *versus* THOMAS FLANDERS.

Where A put the name of B. to a promissory note without any authority from
   B, and the note was delivered to the payee for a valuable consideration, it
   was held that under these circumstances the law would presume that A in-
   tended to bind himself, that he might so bind himself, and that he was liable
   in an action against him in his true name on the note, upon a count alleging
   that he made the note by the name of B.
A civil remedy merges in a felony only until a trial can be had for the felony,
   whether the trial eventuate in an acquittal or in a conviction.

ASSUMPSIT.   The declaration contained two counts. The first count was for $500 money had and received. The second count was upon a promissory note dated December 28, 1825, for $500, payable to the Grafton Bank, on demand with interest after sixty days, and alleged to be made by the defendant by the name of E. H. Mahurin.

The cause was tried here upon the general issue, at November term, 1826, when a note was produced, dated December 28, 1825, for $500, payable on demand with

interest after sixty days, and purporting to be signed by C. S. Bailey, W. Wallis, and E. H. Mahurin, and to contain their joint and several promises, which had been discounted at the bank.

The plaintiffs claimed to recover on the ground, that the defendant put the name of E. H. Mahurin to the note without any authority from any person of that name, and the question submitted to the jury was, whether the defendant did so put his name to the note.

Flanders had been indicted for the forgery of Mahurin's name, and tried and acquitted, and his counsel offered to read to the jury the record of the acquittal as evidence, in this case, that he did not sign the note as alleged, but the court ruled that the record was not competent evidence for that purpose.

The court directed the jury to find for the plaintiffs if they believed that Flanders put the name of Mahurin to the note without authority.

The jury returned a verdict for the plaintiffs, and the defendant moved for a new trial.

*I. Bartlett*, for the defendant contended, that if the name of Mahurin was put to the note without his authority by the defendant, it was a forgery, and that the civil remedy was merged in the felony.

*Woodbury*, on the same side. No man is liable in his own right on a written promise or obligation unless it appear on the face of the instrument that he made the promise or obligation. This cannot appear unless his name is there written either by himself or an authorized agent. These are elementary principles and it is believed that no case can be found conflicting with them. Chitty on Bills, 31, 74, 270 ; 2 N. H. Rep. 354, *Underhill* v. *Gibson.*

Where a person's name is truly written by himself, no question of course can arise. When it appears on the instrument but is written there by another, duly authorized for that purpose, it comes within the principle.

When the baptismal or ordinary name of a party does not appear on the instrument, but a name belonging to him by reputation, it comes within the principle; because it must be proved that he was before that time known and called by this name of reputation.

Where a name appears spelt differently from the way in which it is commonly spelt, but with letters having the same sound, *idem sonans,* it comes within the principle. And so it does, if the name written is used indiscriminately to mean the same as his ordinary name; as Sandy instead of Alexander, or Fanny instead of Frances. Cro. Ja. 425; 3 Caine's, 219; 11 Mass. Rep. 89 and 338; 10 ditto, 20, 78, 205.

Where the name written comes within none of these illustrations, but is a name different from his ordinary one, yet averred by him to the promisee, or obligee, or grantee, to be his true name and to represent or designate him who delivers the writing, and makes the contract and gets the credit—it then also comes within the principle; because he puts upon the instrument and passes as his own name that which is there written, and he himself gets credit as the person designated by it, and is therefore estopped to deny it to be his afterwards. Peake's Ev. 18–20; Perkins, cap. 1, sec. 36, 37, 54; 1 Strange, 316; 10 Mass. Rep. 20; 9 Johns. 306; 5 ditto, 84.

The case of dormant partners comes within the principle of a name by reputation; the firm or partnership name used, whatever it may be, representing and designating in point of law all persons interested in the partnership. 1 Starkie's N. P. C. 46.

But in the present case, the name of Thomas Flanders does not appear on the written instrument at all. And there was no proof offered, no pretence made that the defendant had ever before been called in a single instance or known by any body under the name of E. H. Mahurin. Nor was it pretended, or attempted to be proved, that the defendant, on this occasion, called himself or repre-

sented himself to be named E. H. M., nor that he delivered the note, or obtained credit, or received the money at all, nor that he designated himself by that name to the promisees.

The Bank never made any contract with the defendant, never confided any money to him, nor loaned any to others on his credit. And he never received aught of the plaintiff's, nor pretended to promise to pay them any thing whatever.

His liability to them in another form of action may be considered when that action, if ever, shall be instituted.

*Bell*, for the plaintiffs.

The opinion of the court was delivered by RICHARDSON, C. J.

One ground of defence upon which counsel rely in this case is, that a forgery has been committed, and that in such a case the law will not permit the party injured to proceed against the offender in a civil suit, but for the sake of the public will compel him to seek his remedy by a criminal prosecution, and merge the civil action in the felony. But to this ground of defence there are two decisive answers.

In the first place, it does not appear that a forgery has been committed. To constitute forgery, it is not enough that the defendant put the name of Mahurin to the note without authority, but it must have been done with an intention to defraud. Now in this case, whatever may be our conjectures, it certainly does not appear that there was any intention to defraud ; it was not submitted to the jury to enquire of the intention ; and it seems to us that there is nothing stated in this case, which will warrant us in saying that a felony has been committed. On this point, the case of *Gibson* v. *Minet*, 1 H. Bl. 569, is a direct authority. In that case the special verdict found that Livesay, Hargrave and company, drew a bill of exchange upon Gibson and Johnson, purporting to be payable to John White, and endorsed on the bill the name of

John White, knowing that there was no such person in existence ; which bill was, with the same knowledge, accepted by Gibson and Johnson, and then passed to Minot and others for a full and valuable consideration. In the house of lords the question was put to the judges, "whether the making of the instrument declared upon appears upon the special verdict to be so criminal that the policy of the law will not suffer an action to be founded upon such instrument ?" Upon this question there was no difference of opinion, and it was held that it did not appear that a felony had been committed, because it was not found that there was an intention to defraud. The lord chief baron Eyre, in delivering his opinion, said, "that although the transaction stated in the special verdict appears to be of a very criminal nature, perhaps 'sufficient to have warranted a charge of forgery against both the drawers and acceptors of this bill, and also to have warranted the finding of all that is necessary to constitute the crime of forgery in both, the crime does not appear upon their special verdict to be so constituted. There is no fraudulent intention found which is of the essence of the crime."

We deem this a sufficient answer to this ground of defence, but we shall state another which is equally decisive. The case states that the defendant has been tried for the forgery and acquitted. The true ground of the general rule, that an action shall not be sustained for an act which amounts to felony, is, to prevent the criminal justice of the country from being defeated. And it has been solemnly decided that after an acquittal of the felony, the reason of the rule ceasing, the rule itself does not apply. 12 East, 409, *Crosby* v. *Leng.*

It had been before settled that the rule did not apply where there had been a conviction. 1 Mod. 282, *Lutterell* v. *Reynell* ; Latch, 144, *Markham* v. *Cobb* ; 1 Lev. 247, *Cooper* v. *Witham* ; Yelv. 89, *Higgins* v. *Butcher.*

It seems now to be settled, that the right of action merges in the felony, only until the party has been tried

for the felony, whether the trial eventuates in an acquittal or conviction. Public justice is then satisfied. The object of the rule, that the civil remedy should merge in the felony, was to stimulate the injured party to bring the offender to justice ; but it was never intended to take away his redress absolutely after the ends of public justice were attained.

We are therefore of opinion, that if it distinctly appeared that the defendant, in this case, was guilty of forgery in putting the name of Mahurin to the note, this cause could not be defended on the ground that the civil remedy was merged in the felony.

It may be further remarked on this point, that it has frequently been held that a party whose name has been forged may subsequently so adopt the forged signature as to make himself liable upon the instrument. 3 Espin. N. P. C. 60, *Barber* v. *Gingell* ; 4 ditto, 226, *Leach* v. *Buchanan*. It then remains to enquire whether upon the case stated the plaintiffs are by law entitled to recover in this form of action ?

With respect to the equity and justice of the claim of the plaintiffs there can be no diversity of opinion. Upon the credit of the name of Mahurin which the defendant put upon the note without authority, he and his associates obtained from the bank $500, as a loan, and in equity and good conscience, he ought to be responsible to the bank for this money, and to repay it according to the terms of the loan. There is no honest man in the community who will not say that, under such circumstances, he ought to be compelled to refund the money. It is wholly immaterial whether he received the money or any part of it himself. If he lent to others his skill in imitating the signature of Mahurin for the purpose of enabling them to obtain money from the bank, not for his own emolument, but merely to oblige them as friends, the claim of the bank against him is founded on as strong and clear equity and justice as if he had received every cent of the money for his own use. We therefore consid-

er it as altogether indisputable that the claim of the bank against the defendant is both equitable and just.

And there is in the law of the land what has with great propriety been called "*a sort of moral estoppel*," which declares that no man shall be heard to allege his own crime or turpitude in his defence, and which must preclude this defendant from saying in a court of justice, that by putting the name of Mahurin to the note he intended to defraud the bank. And as the bank must be defrauded, unless he is personally responsible, the principle of this estoppel seems to us to preclude him from saying, after it is found by a jury that he put the name to the note, that he did not intend to bind himself. And we are of opinion that the law for the furtherance of justice will presume that he intended to bind himself, and to be responsible for the money.

Such a presumption for the purpose of sustaining an action in a particular form to enforce the payment of a just claim, is not a new thing in the law, but is sanctioned by the most respectable authorities. In the case of *Gibson et a.* v. *Minet et a.*, 1. H. Bl. 569, to which we have before alluded, this species of presumption is stated and applied by several judges. The bill of exchange in that case was payable to a fictitious payee by the name of White, or his order, by whom it purported to be endorsed. It could not therefore be enforced as a bill payable to order according to the terms of it. Hotham, baron, in declaring his opinion, said, "the acceptors having given this bill a currency, when they knew that it could never be paid to the order of White, *the law will presume that they intended that formality should be waived.* If it be waived what does it remain but a bill payable to bearer? Knowing that it was impossible to pay it in the shape it bore, they accepted it; but knowing at the same time that it was possible to pay it in another. *The law will conclude then that such was their intent.*"

In the same case Gould J. says, "it is a rule of law that every instrument shall be construed in the most forcible

manner against the maker. The argument then results to this ; it was in the power of the drawers and acceptors, for it is evident they acted in concert, to have framed the bill to be payable to a real person or order, or to bearer ; and in either case it would have been effectual to charge the drawers, and after acceptance, the drawees. But they do not choose to take the first course, and it is highly probable, (I might say apparent,) that the reason was, they knew no substantial payee would endorse the bill, and so their purpose in that form would be defeated. They therefore resort to an elusory form which could not in that shape have any force or effect. It remains then that it should be construed that they meant the bill should be payable to bearer, as being the only way in which in its original formation it could take effect and oblige them as a bill of exchange. No violence is done ; it follows and enforces *what must be presumed to be their intention,* the payment to the person justly entitled to the money.

And in *Tatlock* v. *Harris,* 3 D. & E. 174, which was assumpsit for money had and received, and in which the claim of the plaintiff was founded on a bill of exchange, payable to a fictitious person, Lord Kenyon, in delivering the opinion of the court, said, "here the defendant being a debtor to the house of Lewis and Potter, drew a bill which he delivered to them, and drew it in terms which could not be proved in a formal manner, he was not only privy to the transaction, but the very negotiator of it, and by drawing it, he put himself in a situation to pay what he was in conscience bound to pay, therefore it was an appropriation of so much money to be paid to the person who should become the holder of the bill. In making this decision we do not mean to infringe a rule of law which is very properly settled, that a chose in action cannot be transferred, but we consider it as an agreement between all the parties to appropriate so much property, to be carried to the account of the holder of the bill ; and this will satisfy the justice of the case without infringing

any rule of law." This is a very striking instance of a presumption raised by the law merely for the purpose of enforcing a just claim in a particular form of action.

In the case of *Hill* v. *Perrott*, 3 Taunt. 274, the action was indebitatus assumpsit for goods sold; and the evidence to support it was, that the defendant had by fraud procured the plaintiff to sell the goods to a person who was insolvent, and afterwards got the goods into his own possession. It was held that the law would imply a contract to pay for the goods from the circumstance of their having come to the defendant's possession, and that the defendant could not be permitted to set up a sale to another person as a defence, that sale having been procured by his own fraud.

So in *Biddle et a.* v. *Levy*, 1 Starkie's N. P. C. 20, which was assumpsit for goods sold and delivered, Gibbs, C. J. held that the action was supported by evidence, that the goods had been sold to the defendant's son who was an infant, upon a fraudulent representation by the defendant, who took the goods into his own hands.

Other instances might be cited, of similar presumptions made by the law for the same purpose, but we deem these instances as sufficient to warrant us in saying that the law will presume, under the circumstances of this case, that the defendant intended to bind himself personally. Such being then his intention, the question remains to be examined whether he could so bind himself by the name of Mahurin as to make himself liable in an action against him on the note in his true name?

If an individual assume a name for the purpose of making a written contract, and put that name to the contract with a view to bind himself; there seems to be no reason why courts should not consider the name thus assumed as his name, *pro hac vice*, and hold him to fulfil the contract. And it must now be considered as settled, that he is bound by such a contract. Thus if A enter into a bond by the name of B, and a suit is brought against him

by the name of B, and he plead the misnomer in abatement, the plaintiff may reply that he is known by one name as well as the other, and the bond will be evidence of it. 3 Taunt. 504, *Gould* v. *Barnes.*

Indeed, in such a case, the defendant is estopped by the bond to say that the name he put to it is not his name. 6 Mod. 225, *Linch* v. *Hook* ; Com. Dig. "Abatement" F 18.

In *Williamson* v. *Johnson,* 1 B. & C. 146, the case was this ; the managing partner in the firm of Habgood and company, was in the habit of issuing bills of exchange into the world endorsed by Habgood and Fowler. There had been a company by the name of Habgood and Fowler, but the style of the firm had been changed for several years for that of Habgood and company, in which there was no person of the name of Fowler. There was no evidence that the rest of the firm were privy to the endorsement of bills in this manner, or that they ever adopted the style and firm of Habgood and Fowler. It was held that the firm of Habgood and company might be considered as having adopted the style of Habgood and Fowler, for certain purposes of business, and that bills thus sent into the world were well endorsed.

This case shews that a bill of exchange may be negotiated by one of a firm in an assumed name of the firm.

It is believed that the principle is indisputable that a party may bind himself by an assumed name.

But can a plaintiff bring his suit in such a case and declare against the defendant in his true name, averring that he made the contract by the assumed name ?

It seems to be settled, that if a person enter into a bond by a wrong christian name, and should be sued on such bond, he should be sued by such name, and a declaration against him, by his right name, stating that he by the wrong name executed the bond, is bad. 3 Taunt. 504, *Gould* v. *Barnes.* The grounds in which this principle rests are not very obvious. The earliest case in which

we find it recognised, is that of *Field* v. *Winslow* ; Cro. Eliz. 897. That was debt, in which the plaintiff counted that the aforesaid James by the name "of John made the obligation." The defendant craved oyer of the bond, whereby it appeared that the defendant by the name of John Winslow made the writing. Whereupon the defendant demurred. And the reporter says "all the court held that the action lay not, *for John cannot be James.*" We are now inclined to think if the question were now for the first time to be settled, whether this principle should be adopted, such a reason would not be deemed in any court sufficient to sustain it. But the rules of law in relation to remedies upon sealed instruments were settled in very early times, when much less liberal views were cherished on the subject than have prevailed in modern times. Whoever goes back to the younger days of the common law and traces its history down to the present age, will find that the time has been, when judges were much more ready to listen to objections to the forms of remedies attempted to be applied in particular cases, than to search for principles on which they might be supported. But in these later times a much more liberal spirit has been cherished and courts have been disposed, when the cause of justice seemed to require it, to hold that the law might make many strong presumptions for the sake of sustaining the remedy without stopping to enquire whether such presumptions accorded with the real facts, and to justify the course on the ground that it was done merely for the purpose of attaining the great ends of justice, without violating any settled principle of law.

These remarks may be fully illustrated by comparing the rules and principles which now govern the ancient actions of debt and covenant, with the rules and principles which have been adopted in relation to assumpsit, which is a remedy adopted and settled in more modern times. Thus if a man enter into a single bond for the

payment of several sums of money at several days, debt will not lie till the last day be past. Buller's N. P. 168. But upon a promissory note, payable by instalments, assumpsit may be maintained as soon as the first instalment becomes due. 2 Mass. Rep. 283, *Tucker* v. *Randall.* So where one man covenants with another for the benefit of a third person, such third person cannot maintain covenant upon the contract in his own name. 1 N. H. Rep. 49, *How* v. *How.* But a parol promise by one person to another for the benefit of a third person, will entitle such third person to sustain an action in his own name. 1 Johns. Rep. 139. This argument would admit a much more ample illustration, but this is deemed sufficient to shew that because debt cannot be maintained on a bond by an averment that the obligor made it by another name, it can by no means be safely concluded that assumpsit cannot be maintained by such an averment.

We have attentively considered this point without being able to find any reason whatever, why the plaintiffs should not, under the circumstances of this case, have judgment on the second count in the declaration. It has been shown that it was competent to the defendant to bind himself by a contract made in an assumed name, and this count alleges that the defendant thus made the contract on which this action is founded. It would be singular indeed, if a person who promises in an assumed name is liable on the promise, and yet an action cannot be maintained by an averment of the facts on which his liability rests. In *Willis* v. *Barrett,* 2 Starkie's N. P. C. 29, the declaration alleged the promise to be made to the plaintiff by the name of Willison, and the plaintiff was permitted by Lord Ellenborough to show that *Willison* was inserted in the note by mistake for *Willis.*

And we are on the whole of opinion that the plaintiffs are justly entitled to recover of this defendant the contents of the note described in the declaration, that with-

out infringing any settled principle of law, judgment may
be rendered on the second count in the declaration in
their favor, and that judgment ought to be so rendered.

*Judgment on the verdict.*