# GRAFTON,

## DECEMBER TERM, A. D. 1852.

## SLEEPER *v.* WEYMOUTH & TR.

Where several persons are summoned as trustees, and are not expressly declared against as being jointly liable, they are to be regarded as being severally chargeable, if at all.

In such case, the liability of each is to be tried and determined in the same manner as it would be if he were alone summoned.

In such case, also, each trustee is to be charged or not, according to the facts contained in the disclosure which he himself makes, without regard to those contained in that of any other. The disclosure of neither trustee will ordinarily furnish any evidence for or against any other.

By the disclosure of B., one of two trustees, sought to be severally charged, it appeared that he was employed by W., the principal defendant, as attorney, to collect a note which W. held against one T., and that he afterwards recovered judgment for the amount of it, in the name of W.; that an execution was issued and placed by B., as the attorney of the creditor, in the hands of one M., a deputy sheriff, and who is the other trustee, to be levied upon certain personal property which had been attached upon the original writ; that the property was sold at auction, and was bid off by B., for one A., who at the time claimed to be the creditor, as his agent and attorney, and that B. was duly authorized and directed by A. to do so, and that B. so informed the officer at the time of the sale; that the sale was prior to the service of the process upon B., and the property (which was a house and barn, so situated as to be regarded as personal property,) was sold by A., in connection with the land on which it stood; that B. never was in the actual possession of the property sold; that A. claimed the judgment and execution, as the assignee thereof, and that prior to the rendition of the judgment, B. received a written notice from A., and a verbal notice from W., that the claim against T. had been sold and assigned to A., and a written direction from A. to proceed in the collection of the note for the benefit of A.; it was *held*, that B. was not chargeable as the trustee of W.

By the disclosure of M., the other trustee, it appeared that he was a deputy

sheriff, and, before the service of the process upon him, he received the aforesaid execution against said T. for collection, and that in virtue thereof he sold a house, the property of T., at auction, and that the house was bid off by said B., the other trustee, who at the time told M. that he bid off the property for the creditor, and not for himself. M. received the execution from B., with instructions to sell the property which had been attached upon the original writ, and M. was not informed that W. was not the owner of the execution, until after the sale of the property and the service of the trustee process upon him. It was *held*, that M. was not chargeable as the trustee of W., and that the property being bid off, by his agent, for the creditor, who had a right to purchase it, the duty and liability of the officer in the matter were fully discharged and ended.

FOREIGN ATTACHMENT. The questions submitted for decision in this case, arise upon the several disclosures of the trustees, and the facts upon which they arise will sufficiently appear in the opinion.

*N. B. Bryant*, for the plaintiff.

*George B. Burns*, for the trustees.

WOODS, J. The trustees, Burns & Martin, are not declared against as being jointly liable in this action. They are therefore to be regarded as being chargeable severally, if at all. *Ingraham* v. *Olcock & Trustees*, 4 N. H. Rep. 243. The liability of each is to be determined in the same manner as it would be if he were alone summoned.

Of course it results that each one is to be charged, or not, according to the facts contained in the disclosure which he has himself made, without any regard to those contained in that of the other. *Comstock* v. *Farnham*, 2 Mass. 96; *Hawes* v. *Langton*, 8 Pick. 67; *Barker* v. *Taber*, 4 Mass. 81; *Stackpole* v. *Newman*, 4 Mass. 85. The disclosure of neither furnishes any evidence for or against the other. The disclosures are therefore to be considered separately, and the liability of each is to be judged of and determined by the facts which he has himself disclosed.

Burns, in his disclosure, stated in substance that prior to 1849 he was employed by Weymouth, the principal defendant, as an attorney to collect a note for about $300, which he held against one Tucker, and for that purpose he commenced an action against Tucker in the name of Weymouth, and that at the term of the court of common pleas for the eastern judicial district in Grafton county, holden in May, 1849, judgment was recovered against Tucker for about $330 00, being the amount of the note, including interest.

He further disclosed, that after the recovery of said judgment, an execution was issued thereon, which he, acting as the attorney of the creditor, placed in the hands of Martin, the other trustee, who was then a deputy sheriff for said county, to be executed by him by a sale and levy of certain personal property which had been attached upon the original writ. He further stated, that in pursuance of his directions, the property was sold by the officer at auction, and that he, Burns, bid it off for the creditor, as his agent and attorney, being duly authorized and directed to do so, and so informed the officer at the time of the sale. He further stated that the property sold was a house, barn and shed, so situated as to be property regarded as personal property. Tucker, the owner of the buildings, did not own the land on which they were erected, but the buildings had been erected by him, with the license and permission of the owner of the land.

The person for whom Burns bid off the buildings was one Averill, of Fitchburg, in the commonwealth of Massachusetts, who claimed to be the assignee of the note in the suit against Tucker, and the owner of the judgment and execution against him.

Burns further disclosed that said Averill purchased the land upon which the buildings stood, of the owner thereof, and afterwards sold the same, together with the buildings,

to Bartlett and Taylor, of Bristol, as said Burns was informed and believed.

The sale of the property, upon the execution against Tucker, was made prior to the time of the service of the trustee process upon the trustee. Burns further disclosed that he was never in possession of the property sold.

The disclosure further stated, that prior to the rendition of the judgment, Burns received a written notice from Averill, and a verbal notice from Weymouth, that the claim against Tucker had been sold and assigned to Averill, and also a written direction accompanying said written notice, to proceed in the collection of the note for the benefit of Averill, and to account to him for it.

The question is, whether upon the facts thus disclosed by him, Burns, the trustee, is. chargeable either on account of goods shown in his possession belonging to Weymouth, or by reason of any indebtedness or liability of said trustee to him existing at the date of the service of the trustee suit, or since that period? And we think it is quite too clear to admit of doubt, that Burns is not chargeable for the personal property attached and sold as before stated.

Prior to the sale it belonged to Tucker, and upon the sale it most clearly became the property of Averill. According to the disclosure, Burns bid off the property for Averill, with his authority and direction, and not for himself, and the officer was informed of these facts at the time, and the property was never in the possession of Burns, so as to charge him upon that ground, even if it had been Weymouth's property. *Greenleaf* v. *Perren*, 8 N. H. Rep. 273.

It is perfectly apparent, however, that Weymouth never owned the buildings. This is not a matter fairly open to question upon the disclosure.

The attachment upon the original writ did not invest him with the property of the buildings, and that was all the right he had. The title, by the sale upon execution,

passed to Averill, if to any one; certainly not to Weymouth or Burns. And Averill was alone answerable for the sum at which the buildings were bid off. And so far as this trustee is concerned, it is immaterial whether Weymouth or Averill, in fact, owned the debt and execution. If Weymouth owned it, still he stated to Burns that Averill owned it, and that surely authorized Burns, so far as he was concerned, to treat the property in the execution as belonging to Averill, and to allow him to appropriate the fruits of it to himself before this trustee suit was served upon him.

Burns is not in a situation to be required to show that the sale of the note in this case was *bona fide*, and upon a good and adequate consideration.

It is enough that it appears that Weymouth never owned the buildings, and even if he had owned them, that Burns never intermeddled with them, and that Burns did not become in any manner liable for the purchase money of the buildings upon the sale thereof. He being duly authorized by Averill to bid off the buildings for him, and having bid them off, and at the same time having disclosed to Martin, the officer, the principal for whom the purchase was made, and his own agency in the matter, and the property being struck off to Averill, he could not, upon any legal or equitable principle, be made answerable for the payment of the sum at which the property was bid off. Averill, the principal, was alone liable. *Eastman* v. *Coös Bank*, 1 N. H. Rep. 23 ; *Underhill* v. *Gibson*, 2 N. H. Rep. 353.

Burns, then, is not shown by the disclosure to have been in possession of any property of Weymouth, nor to have been in any manner indebted to him at the time, or since the service of this process upon him, and he must therefore be discharged.

We will next inquire whether Martin, the officer, be chargeable or not as the trustee of Weymouth. He disclosed in effect that he was a deputy sheriff, and as such, before the service of this process, received the execution

spoken of against Tucker, for collection, and that in virtue thereof he sold a house, the property of Tucker, at auction, and that the house was bid off by Burns, the other trustee, who at the time told him that he bid off the property for the creditor, and not for himself. Martin received the execution from Burns, with instructions to sell the property that had been attached upon the original writ. Martin was not informed that Weymouth was not the owner of the execution until after the sale of the property, and the service of the writ in this case.

The sale was made in August, 1849, and the writ in this action was served upon Martin in October, 1849.

Upon the foregoing facts, disclosed by Martin, we think he cannot be charged as the trustee of Weymouth. He made the sale, acting under the direction of Burns, whose authority as attorney of the creditor, in the collection of the note, no one disputes, and the property was bid off, as Burns informed Martin, by him, for the creditor. Now it is, so far as Martin is concerned, to be taken that the property was bid off for the creditor, as Burns, the agent, stated the fact to be, and if for the creditor, there is an end of the duty and liability of the officer. The creditor had a right to bid off the property, and the officer to sell it to him, if the purchase were fair, and the creditor were the highest bidder. And this might as well be effected by the agent of the creditor as by the creditor himself. Having sold to the creditor, there was no duty resting upon the officer to collect the money of him in order to compel himself to answer upon a trustee process for it as the trustee of the creditor in the execution, or to repay the same to the creditor upon request. To require such a proceeding by the officer would be to require him to collect money of a person who was himself entitled to it when collected. The sale of the property to the creditor extinguished the execution. Nothing more was necessary to perfect the discharge of the execution, or to protect the rights of any one, saving

Sleeper *v.* Weymouth.

the return of his doings, which it was the duty of the offi-
cer to make upon the execution.

By the disclosure of Martin, no one is shown to have
had an interest in the execution, excepting Weymouth.
But that is of no consequence, for if he is to be regarded
as the creditor, then the sale was made to him ; and for the
protection of the trustee, it is immaterial whether Wey-
mouth or Averill is to be regarded as the creditor at the
sale, for it was sold to the creditor, whoever he might be,
and that under the bidding and direction of the creditor's
attorney, who recovered the judgment, and delivered the
execution to him. It is quite clear that Martin never had
in his possession any goods or chattels belonging to Wey-
mouth, for the buildings, as we have seen, were never his
property ; and also that Martin is not shown to have been
indebted to him, or in any way liable to him for any money
arising upon the sale of the property. We are, on the
whole, clearly of the opinion that Martin is not chargea-
ble upon the facts stated in the disclosure, that he is not
shown to have had either money, goods, rights or credits
of the principal defendant in his hands or possession for
which he can be made properly accountable in this action,
according to the facts disclosed. He must therefore be dis-
charged.

*Trustees discharged.*